UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROYAL SURPLUS LINES INSURANCE COMPANY, a Connecticut corporation,**<br><br>                    **Plaintiff,**<br><br>     **v.**<br><br>**D.H. WILLIAMS CONSTRUCTION, INC., a California Corporation, and DOES 1 through 10, inclusive,**<br><br>                    **Defendants.** | **1:06-CV-00052-OWW-SMS**<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STAY** |

## 1.   INTRODUCTION

Plaintiffs Royal Surplus Lines Insurance Company ("Royal") brings a declaratory judgment action under 28 U.S.C. §2201(a) to be relieved of any duty to defend or indemnify Defendant D.H. Williams Construction, Inc. ("Williams") under a comprehensive general policy of insurance No. K2HA120996 ("the policy"). The policy provided coverage from August 1, 2002 to August 1, 2003. Williams brings a motion to dismiss or, in the alternative, a motion to stay the action. Royal opposes the motions.

## 2.   PROCEDURAL HISTORY

Royal filed its complaint on January 16, 2006. (Doc. 2, Complaint for Declaratory Relief and Demand for Jury Trial

**1**

1  ("Complaint").)  On April 14, 2006, Williams filed a motion to

2  dismiss or, in the alternative, motion to stay the proceedings.

3  (Doc. 12, Mot. to Dismiss or, in the alternative, Mot. to Stay.)

4  Royal opposed the motion on April 28, 2006.  (Doc. 14, Memorandum

5  in Opp. re Mot. to Dismiss ("Opposition").)  On May 8, 2006,

6  Williams filed a reply.  (Doc. 17, Reply to Response to Mot.to

7  Dismiss("Reply").)

8                        **3.   BACKGROUND OF THE CASE**

9        **A.   Diversity of the Parties**

10       Jurisdiction is based on diversity and amount in

11  controversy.  28 U.S.C §1332.  Royal is a Connecticut corporation

12  with its principal place of business in Charlotte, North

13  Carolina.  (Doc. 2, Complaint, ¶1)  Williams is a California

14  corporation, with its principal place of business in Fresno,

15  California.  (Id.)  Williams is the only named defendant.  (Id.)

16  The amount in controversy is in excess of $75,000.  (Id., ¶2)

17  This amount is comprised of defense fees and costs already

18  incurred by Royal for defending Williams in an underlying state

19  action, as well as future defense fees, costs, and indemnity

20  payments Royal might be required to pay.  (Id.)

21       **B.   The Underlying State Action**

22       On January 8, 2003, a complaint was filed against Williams

23  and the Santa Rosa Rancheria Housing Department ("Santa Rosa").

24  (Doc. 14, Opposition, at 4)  The action *Earl W. Schott v. D.H.*

25  *Williams Constr., Inc., et al.,* Case No. 03 CE CG 12652 ("the

26  underlying action"), was filed in the Superior Court of the State

27  of California, County of Fresno.  (Id.)  The action centers

28  around a dispute between Williams and Santa Rosa over the

                                    **2**

construction of the Santa Rosa Housing Subdivision ("the

subdivision") in Kings County, California.  (Id.)  A mandatory

settlement conference took place on June 5, 2006.  (Doc. 17,

Reply, at 6)  The underlying action is proceeding in Fresno

County Superior Court in October 2006.[1]  Royal agreed to defend

Williams in the state case under a full reservation of rights by

letter dated February 25, 2005.  (Doc. 2, Complaint, ¶33)  Royal

has provided and continues to provide for D.H. Willams' defense

in the underlying state action.  (Id., ¶42)

### i.   The Subdivision

In May 2001, Santa Rosa solicited and received bids for the

construction of the subdivision.  (Doc. 14, Opposition at 3)  The

bid was awarded to Williams.  (Id.)  On June 8, 2001, Williams

contracted with Santa Rosa to furnish all labor, material,

equipment, services, and platform and complete work required for

the construction of the subdivision.  (Id.)  On September 18,

2001, Williams subcontracted with Earl W. Schott, Inc. ("Schott")

to provide construction services at the subdivision.  (Id.)  As

part of the subcontract, Schott agreed to provide earthwork,

water, sewer, and storm work.  (Id.)

After the subdivision was completed, Santa Rosa, as the

owner, filed a Notice of Completion with the Kings County Clerk-

Recorder on September 16, 2002.  (Doc. 2, Complaint, ¶12)  On

October 10, 2002, Schott served a "Stop Notice Legal Notice to

Withhold Construction Funds" on Santa Rosa, demanding that it set

---

[1] The parties notified the court at oral argument that the
original trial date of June 19, 2006 was continued to October
2006.  The parties did not give a specific day.

**3**

aside $632,760.92 to pay for work completed by Schott under the subcontract but not paid by Williams. (Id., ¶13)  A mechanic's lien was filed on the same date. (Id.)

### ii.  The *Schott* Complaint

The *Schott* complaint alleges that, pursuant to a contract with Williams, Schott performed the work on the subdivision between the date of the contract and September 16, 2002. (Doc. 2, Complaint, ¶15)  Schott further alleged that it performed all conditions, covenants, and promises it made under the Schott subcontract, except repair of a manhole, which Williams would not permit him to repair. (Id.)  The *Schott* complaint also alleged that Williams paid $2,081,741.97 to Schott and that the sum of $592,760.92, including change orders and a $40,000 adjustment with interest is still owing under the subcontract. (Id.) Lastly Schott alleged that Williams failed to pay the balance of amounts still owed for labor, materials, services, and equipment to complete earthwork and other related work on real property owned by Santa Rosa. (Doc. 14, Opposition, at 4)

### iii.  The Williams Cross Complaint

On July 9, 2003, Williams filed a cross-complaint in the underlying action against Schott, Santa Rosa, and other named defendants for breach of contract, express contractual indemnity, quantum meruit, as well as for unpaid amounts for work performed, and specific relief. (Doc. 2, Complaint, ¶16)

### iv.  The Santa Rosa Cross Complaint

Santa Rosa filed its initial complaint on July 21, 2004. (Doc. 2, Complaint, ¶17.) On August 2, 2005, Santa Rosa filed an amended cross-complaint in response to new information obtained

**4**

during discovery in the underlying state action.  (Id., ¶18)

On November 14, 2005, Santa Rosa filed a Second Amended Cross-Complaint and claimed the following:

> 1.  Breach of Contract against Williams.
>
> 2.  Breach of Contract against Schott.
>
> 3.  Negligence against Williams and Schott.
>
> 4.  Fraud, Deceit (Intentional Misrepresentation) against Williams.
>
> 5.  Fraud, Deceit (Concealment of Fact) against Williams.
>
> 6.  Fraud, Deceit (Intentional Misrepresentation) against Schott.
>
> 7.  Fraud Deceit (Concealment of Fact) against Schott.
>
> 8.  Express Contractual Indemnity against Williams.
>
> 9.  Implied Contractual Indemnity against Williams.
>
> 10.  Implied Contractual Indemnity against Schott.
>
> 11.  Implied Equitable Indemnity against Williams.
>
> 12.  Recovery on Performance and Payment Bond against Williams.
>
> 13.  Express Contractual Indemnity against Insurance Company of the West.
>
> 14.  Breach of Express Warranty against Williams.
>
> 15.  Breach of Implied Warranty against D.H. Willams.

(Doc. 2, Complaint, ¶21)

The Santa Rosa cross complaint includes numerous allegations against Williams.  First, Santa Rosa alleges that the "sewer facilities and storm drain system constructed and managed by

1  Williams are severely impaired, cannot be utilized in the housing

2  subdivision, and must be substantially repaired.  (Doc.2,

3  Complaint, ¶22)

4      Further, as to the fraud, deceit (intentional

5  misrepresentation of fact) cause of action, Santa Rosa alleges

6  that Williams verbally represented that its construction work was

7  complete and that it conformed with the requirements of the

8  engineering plan and specifications.  (Id., ¶23)  Williams made

9  these representations on "numerous occasions" including at

10  construction meetings in late June, July, August and September of

11  2002.  (Id.)  Williams also made a written request to have final

12  notice of completion issued so that final payment would be made.

13  (Id.)  In reliance on Williams' misrepresentations, Santa Rosa

14  was misled and executed the notice of completion on September 13,

15  2002.  (Id.)

16      With respect to the fraud and deceit (concealment of facts)

17  claims, Santa Rosa alleges that on or about June, 13, 2002, June

18  14, 2002, and July 24, 2002, Williams contracted with a video

19  inspection service to videotape the underground storm drain and

20  sewer lines in the subdivision.  (Doc. 2, Complaint, ¶24)  Santa

21  Rosa claims that Williams purposefully concealed the existence of

22  these video inspection tapes from members of Santa Rosa and the

23  construction manager.  (Id.)  Santa Rosa further alleges that the

24  video inspector told Williams that the condition of the pipes on

25  the tapes were the worst he had ever seen and that Williams

26  discussed concealing the inspection tapes with Schott.  (Id.)

27  Santa Rosa believes that Williams knew important facts about the

28  storm drain system and failed to disclose these facts and the

**6**

videotape of the system so that Santa Rosa would issue the notice
of completion.  (Id.)  The Santa Rosa cross complaint also
includes claims and allegations against Schott.  These
allegations and claims are not included in the pleadings.

   **C.   Terms of the Insurance Policy[2]**

Royal issued insurance policy number K2HA120996 to Williams
providing comprehensive general liability coverage for the period
of August 1, 2002 to August 1, 2003.  (Doc.2, Complaint, ¶25)
The policy includes insurance limits of $2 million general
aggregate, $2 million products completed operations aggregate
limit, $1 million per occurrence.  (Id.)  Subject to all of its
terms, the policy provides liability coverage for those sums that
the insured becomes legally obligated to pay as damages because
of "bodily injury" or "property damage" under Coverage A and
"personal and advertising injury" to which insurance applies
under Coverage B.  (Id.)

   **i.   Definitions**

The policy contains the following definitions:

   1.   "Impaired Property" is defined as
        "tangible property," other than "your
        product" or "your work" that cannot be
        used or is less useful because:

        a.   It incorporates "your product" or
             "your work" that is known or
             thought to be defective, deficient,
             inadequate, or dangerous; or

        b.   You have failed to fulfill the
             terms of a contract or agreement;
             if such property can be restored to

_____

[2] A copy of the insurance policy was not included in the
pleadings.  It is therefore unclear whether there is an exclusion
for liability assured under the contract.

**7**

use by:
i.   The repair, replacement,
     adjustment, or removal of
     "your product" or "your work";
     or
ii.  Your fulfilling the terms of
     the contract or agreement.

2.   "Your product" is defined as:

a.   Any goods or products, other than
     real property, manufactured, sold,
     handled, distributed, or disposed
     of by:
i.   You;
ii.  Others trading under your
     name; or
iii. A person or organization whose
     business or assets you have
     acquired; and

b.   Containers (other than vehicles),
     materials, parts or equipment
     furnished in connection with such
     goods or products.

c.   "Your product" includes:
i.   Warranties or representations
     made at any time with respect
     to the fitness, quality,
     durability, performance or use
     of "your product"; and
ii.  The providing of or failure to
     provide warnings or
     instructions.

d.   "Your product" does not include
     vending machines or other property
     rented to or located for the use of
     others but not sold.

3.   "Your work" is defined as:

a.   Work or operations performed by you
     or on your behalf; and

b.   Materials, parts or equipment
     furnished in connection with such
     work or operations

c.   "Your work" includes:
i.   Warranties or representations
     made at any time with respect
     to the fitness, quality,
     durability, performance or use

**8**

                              of "your work"; and
                    ii.   The providing of or failure to
                          provide warnings or
                          instructions.

          4.    The policy defines "occurrence" as "an
                accident including continuous or
                repeated exposure to substantially the
                same general harmful conditions."

          5.    "Residential" means single family
                dwellings, multi-unit residential
                subdivisions, tract homes, master
                planned residential communities,
                residential condominiums, residential
                townhouses and/or residential duplexes.

(Doc. 2, Complaint, ¶28, ¶31, and ¶32)

          **ii.   Insuring Agreement Under Coverage A**

     The policy contains Commercial General Coverage Form CG-00-01-01-96 and Common Policy Conditions IL-00-17-11-85.[3]  The insuring agreement under Coverage A provides:

          1.    Insuring Agreement
                a.    We will pay those sums that the
                      insured becomes legally obligated
                      to pay as damages because of
                      "bodily injury" or "property
                      damage" to which this insurance
                      applies.  We will have the right
                      and duty to defend the insured
                      against any "suit" seeking those
                      damages.  However, we will have no
                      duty to defend the insured against
                      any "suit" seeking damages for
                      "bodily injury" or "property
                      damage" to which this insurance
                      does not apply.  We may, at our
                      discretion, investigate any
                      "occurrence" and settle any claim
                      or "suit" that may result.

          2.    This insurance applies to "bodily
                injury" and "property damage" only if:
                a.    The "bodily injury" or "property

_____

     [3] Copies of Commercial General Coverage Form CG-00-01-01-96 and Common Policy Conditions IL-00-17-11-85 were not included in the pleadings.

**9**

damage" is caused by "an occurrence" that takes place in the "coverage territory"; and

b.    The "bodily injury" or "property damage" occurs during the policy period.

c.    Prior to the policy period, no insured listed under Paragraph 1 of Section II - who is an insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "property damage" occurred, then any continuation, change or resumption of such "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Doc. 2, Complaint, ¶26)

### iii.  Insuring Agreement Under Coverage B

The insuring agreement under Coverage B provides:

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Doc. 2, Complaint, ¶27)

### iv.  Expected or Intended Injury Exclusion

The policy contains the following "Expected or Intended

**10**

Injury" exclusion, which states that the policy does not apply
to:

       1.    Expected or Intended Injury:
          a.   "Bodily injury" or "property
              damage" expected or intended from
              the standpoint of the insured.
              This exclusion does not apply to
              "bodily injury" resulting from the
              use of reasonable force to protect
              persons or property.

(Doc. 2, Complaint, ¶29)

      **v.**  **Business Risk Exclusion**

    The policy also contains a "Business Risk" exclusion which
states that the policy does not apply to:

       1.    Damage to Property
          a.   "Property Damage" to:
             i.   That particular part of real
                property on which you or any
                contractors or subcontractors
                working directly or indirectly
                on your behalf are performing
                operations, if the "property
                damage" arises out of those
                operations;
             ii.  That particular part of any
                property that must be
                restored, repaired or replaced
                because "your work" was
                incorrectly performed on it.
                (1)  This paragraph does not
                   apply to "property
                   damage" included in the
                   "products completed
                   operations hazard."

       2.    Damage to Your Product: "Property
             Damage" to "your product" arising out of
             it or any part of it.

       3.    Damage to Your Work
          a.   "Property damage" to "your work"
              arising out of it or any part of it
              and included in the "products-
              completed operations hazard."  This
              exclusion does not apply if the
              damaged work or the work out of
              which the damage arises was
              performed on your behalf by a

1      subcontractor.

2          4.    Damage to Impaired Property or Property
                 not Physically Injured
3                a.    "Property Damage" to "impaired
                       property" or property that has not
4                      been physically injured, arising
                       out of:
5                      i.    A defect, deficiency,
                             inadequacy or dangerous
6                            condition in "your product" or
                             "your work"; or
7                      ii.   A delay or failure by you or
                             anyone acting on your behalf
8                            to perform a contract or
                             agreement in accordance with
9                            its terms.
                       iii.  This exclusion does not apply
10                           to the loss of use of other
                             property arising out of sudden
11                           and accidental physical injury
                             to "your product" or "your
12                           work" after it has been put to
                             its intended use.

13
           5.    Recall of Products, Work, or Impaired
14               Property
                 a.    Damages, claims for any loss, cost
15                     or expense incurred by you or
                       others for the loss of use,
16                     withdrawal, recall, inspection,
                       repair, replacement, adjustment,
17                     removal or disposal of:
                       i.    "Your product";
18                     ii.   "Your work"; or
                       iii.  "Impaired property"
19               b.    if such product, work, or property
                       is withdrawn or recalled from the
20                     market or from use by any person or
                       organization because of a known or
21                     suspected defect, deficiency,
                       inadequacy or dangerous condition
22                     in it.

23    (Doc. 2, Complaint, ¶30)

24          **vi.   Designated Operations Exclusion Residential Work**

25          The policy also includes Endorsement 4 labeled "Designated

26    Operations Exclusion Work" form RSG-1534-0701.[4]  This endorsement

27    _____

28          [4] A copy of RSG-1534-0701 was not included in the pleadings.

**12**

reads in pertinent part as follows:

> The endorsement modified insurance provided under the following:
>
> "COMMERCIAL GENERAL LIABILITY COVERAGE PART; OWNERS AND CONTRACTORS PROTECTIVE LIABILITY PART; PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART"
>
> The insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of any residential work conducted by or for you.

(Doc. 2, Complaint, ¶32)

### D.   Royal's Position on Its Rights and Duties Under the Policy

Royal is silent as to when it undertook a duty to defend Williams in the underlying action.  In response to the Santa Rosa cross complaint Royal issued a supplemental reservation of rights letter dated February 25, 2005.[5]  In this letter, Royal explained its position on its responsibilities to defend and indemnify Williams as to the claims asserted in Santa Rosa's second amended complaint.  (Doc. 2, Complaint, ¶33)  In this letter, Royal advised Williams that under Coverage A of the policy, the Santa Rosa Action does not allege "bodily injury" as that term is defined in the policy.  (Id., ¶34)  Royal also advised that under Coverage B of the policy, the Santa Rosa Action does not allege "personal injury" or "advertising injury" as those terms are defined in the policy.  (Id., ¶35)

---

[5] It is unclear whether Royal was already defending Williams in the underlying action prior to the Santa Rosa second amended cross complaint being brought.  Also, Royal does not contest that it has a duty to represent Williams in the underlying action.

**13**

In the letter, Royal reserved its rights to the following:

1. To deny indemnity obligation on the basis that "property damage" for which recovery is sought was not caused by an "occurrence" as defined by the policy.

2. To the extent that there is any "property damage" arising out of the project which Williams knew had occurred, in whole or in part, prior to the policy, Royal reserved its right to deny indemnity, withdraw from the defense, and to seek reimbursement of defense fees and costs from Williams.

3. To rely upon the Business Risk exclusions to deny indemnity, withdraw from the defense, and to seek reimbursement of defense fees and costs from Williams.

4. To rely upon the "Designated Operation Exclusion Residential Work" endorsement, to deny indemnity, withdraw from the defense, and to seek reimbursement of defense fees and costs from Williams.

5. To rely upon the "expected or intended injury" exclusion to preclude coverage.

(Id., ¶¶36-38 and ¶40)

Royal further advised Williams that it had no duty to indemnify for non covered causes of action or claims for relief.[6] (Id., ¶39)  However, Royal offered to provide independent counsel to Williams pursuant to California Civil Code

---

[6] These claims include the following: (1) breach of contract, (2) express and implied contractual indemnity, (3) implied equitable indemnity, (4) recovery on performance and payment bond, (5) express and implied breach of warranty, (6) fraud, deceit (intentional misrepresentation of fact), (7) fraud, deceit (concealment of fact), (8) and punitive damages.  Royal argues that these alleged causes of action and claims for relief do not qualify as "property damage" caused by an "occurrence" nor do they otherwise qualify for coverage under the policy.  (Doc. 2, Complaint, ¶39)

§2860.[7]  The parties did not provide Royal's reservation of
rights letter.

**E.   Royal's Declaratory Judgment Action**

While Royal continues to provide a complete defense to D.H
Williams in the underlying case, Royal contends that the
majority, if not all, of the causes of action alleged and damages
sought in the Santa Rosa Action are not covered by the insurance
policy.  (Doc. 2, Complaint, ¶43)  Royal argues that its
obligation to contribute toward settlement or damages awarded at
trial is minimal.  (Id.)
Royal brings the following causes of action:

> 1.   Declaratory relief against Williams with
>      respect to Royal's duty to indemnify
>      Williams in the Santa Rosa Action.
>      Specifically Royal requests a judicial
>      determination that:
>      a.   under the terms of the policy Royal
>           has no duty to indemnify Williams
>           in the Santa Rosa action for non
>           covered causes of action or those
>           that fall within the policy
>           exclusions.
>      b.   that most if not all of the
>           "property damage" does not fall
>           within the policy's insurance grant
>           which applies "only if" "prior to
>           the policy period, no insured...
>           knew that the property damage had
>           occurred in whole or in part."

---

[7] Cal. Civ. Code §2860(a) provides:

> "If the provisions of a policy of insurance
> impose a duty to defend upon an insurer and a
> conflict of interest arises which creates a
> duty on the part of the insurer to provide
> independent counsel to the insured, the
> insurer shall provide independent counsel to
> represent the insured..."

**15**

2.    For declaratory relief against Williams
      with respect to Royal's right to
      reimbursement of fees and costs incurred
      by Royal in the Santa Rosa Action.
      Specifically Royal requests a
      declaration that it has a right to
      reimbursement of defense fees and costs
      it incurred in the Santa Rosa action in
      defense of uncovered claims.

3.    For declaratory relief against Williams
      with respect to Royal's right of
      reimbursement of any indemnity payments
      Royal may make in the Santa Rosa action.
      Specifically, a declaration that Royal
      has a right to reimbursement of
      indemnity payments that may be made by
      Royal in the Santa Rosa Action to the
      extent that Royal pays anything towards
      settlement or a judgment in the Santa
      Rosa Action, other than covered damages
      Royal pays in relation to any covered
      causes of action.

(Doc. 2, Complaint, ¶¶ 44-57)

In its declaratory judgment action, Royal seeks:

1.    A judicial determination of the rights
      and duties of the parties

2.    A judicial determination that Royal has
      no obligation to indemnify Williams in
      the Santa Rosa Action, other than for
      covered damages awarded in relation to
      any covered causes of action.

3.    A judicial determination that Royal has
      a right to reimbursement of defense fees
      and costs, incurred in the Santa Rosa
      Action, except for those incurred in
      defense of claims against Williams for
      any covered causes of action.

4.    A judicial determination that Royal has
      a right of reimbursement of indemnity
      payments made by Royal in the Santa Rosa
      Action, to the extent that Royal pays

**16**

anything towards settlement or judgment in the Santa Rosa Action, other than covered damages Royal pays in relation to any covered causes of action.

5.   Damages in an amount to be determined at time of trial but believed to be in excess of the jurisdictional minimums of this court.

6.   Its attorneys' fees.

7.   Costs of suit herein.

8.   Any interest to which Royal is entitled.

9.   Such other relief that the court deems proper.

(Doc. 2, Complaint at 25)   Royal does not bring any other claims that would provide an independent basis for federal jurisdiction.

## 4.   MOTION TO DISMISS

### A.   Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) addresses the court's subject matter jurisdiction, derived from the case or controversy clause of Article III of the U.S. Constitution. *Gingo v. United States Dep't of Educ.,* 149 F. Supp. 2d 1195, 1200 (E.D. Cal. 2000).   Federal courts are limited in jurisdiction; it is presumed that a case lies outside the jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction.   *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *see also, Vacek v. United States Postal Serv.,* 447 F.3d 1248, 1250 (9th Cir. 2006).

A Rule 12(b)(1) jurisdictional attack may be facial or factual.   *Safe Air v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke

17

1    federal jurisdiction. *Id.* By contrast, in a factual attack, the

2    challenger disputes the truth of the allegations that, by

3    themselves, would otherwise invoke federal jurisdiction. *Id.* A

4    jurisdictional challenge is a factual attack which relies on

5    extrinsic evidence and does not assert lack of subject matter

6    jurisdiction solely on the basis of the pleadings. *Id.*

7         Unlike a Fed. R. Civ. P. 12(b)(6) motions, for motions under

8    Fed. R. Civ. P. 12(b)(1), the moving party may submit affidavits

9    or any other evidence properly before the court. *Association of*

10   *Am. Med. Colleges v. United States,* 217 F.3d 770, 778 (9th Cir.

11   2000). It then becomes necessary for the party opposing the

12   motion to present affidavits or any other evidence to satisfy its

13   burden of establishing that the court, in fact, possesses subject

14   matter jurisdiction. *Id.* The district court does not abuse its

15   discretion by looking to this extra-pleading material in deciding

16   the issue, even if it becomes necessary to resolve factual

17   disputes. *Id.*

18        In a factual 12(b)(1) motion, no presumptive truthfulness

19   attaches to plaintiff's allegations, and the existence of

20   disputed material facts will not preclude the trial court from

21   evaluating for itself the merits of jurisdictional claims. *Ritza*

22   *v. International Longshoremen's & Warehousemen's Union,* 837 F.2d

23   365, 369 (1988); *see also Gingo,* 149 F. Supp. at 1200 (quoting

24   *Mortensen v. First Fed. Sav. & Loan Assoc.,* 549 F.2d 884, 891

25   (3rd Cir. 1977).) Moreover, the plaintiff has the burden of

26   proof that jurisdiction does in fact exist. *Gingo,* 149 F. Supp.

27   at 1200. Although deference is given to a plaintiff's factual

28   allegations in a 12(b)(6) motion, plaintiff's allegations need

**18**

1  not be taken as true when considering a rule 12(b)(1) motion.

2  *Id.*

3  **B.   Discussion**

4  **i.   Timeliness of Williams' Motion**

5  Royal argues that Williams' motion is untimely under Fed. R.

6  Civ. P. 12.  Rule 12(a)(1)(A) states, "a defendant shall serve an

7  answer within 20 days after being served with the summons and

8  complaint."  However, Fed. R. Civ. P. 6(b) permits a court, at

9  its discretion, to accept a late filing when the movant's failure

10  to meet the deadline was the result of excusable neglect.

11  Although inadvertence, ignorance of the rules, or mistakes

12  construing the rules do not usually constitute "excusable"

13  neglect, it is clear that "excusable neglect" is a somewhat

14  "elastic concept" and is not limited strictly to omissions caused

15  by circumstances beyond the control of the movant.  *Pincay v.*

16  *Andrews,* 389 F.3d 853, 857 (9th Cir. 2004); *Briones v. Riviera*

17  *Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1996).

18  The United States Supreme Court has established a four-part

19  balancing test for determining whether there has been "excusable

20  neglect" under the federal rules of civil procedure.  *Pincay*, 389

21  F.3d at 856.  The four factors include: (1) the danger of

22  prejudice to the non moving party, (2) the length of delay and

23  its potential impact on judicial proceedings, (3) the reason for

24  the delay, including whether it was within the reasonable control

25  of the movant, and (4) whether the moving party's conduct was in

26  good faith.  *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick*

27  *Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993).)  The

28  determination of whether a party's neglect is excusable is at

**19**

bottom an equitable one, taking account all relevant
circumstances surrounding the party's omission. *Briones*, 116
F.3d at 382.

Royal personally served its complaint to Williams on March
23, 2006.  Williams' response was due on April 12, 2006.
Williams' filed its motion to dismiss on April 14, 2006.

Royal does not claim it suffered any prejudice from Williams
filing the motion two days late.  The delay has not been shown to
have an adverse impact on the proceedings.  Further, the delay
does not appear to be the result of bad faith.  Instead the facts
show that there was some confusion among the parties regarding
Royal granting Williams an extension of time to respond to the
complaint.

Williams understood that Royal granted it an extension of
time to file a "responsive pleading".  (Doc. 18, Decl. of Alyson
A. Berg ("Berg Declaration"), Ex. A.)  Royal clarified in a
letter dated April 14, 2006 that it granted Williams with a two
week extension to "answer" the complaint, not an extension to
file "a responsive pleading."  (Doc. 18, Berg Declaration, Ex.
B.)  On that same day, Williams filed its motion to dismiss with
the court.  Because Williams filed the motion only two days late
and there are no facts showing prejudice to Royal, bad faith, or
adverse impact on the proceedings, Williams' motion will be
decided on the merits.  Moreover, Royal did not move to enter
Williams' default and Williams is not foreclosed from filing a
responsive pleading other than an answer out of time.  Fed. R.

**20**

Civ. P. 55(a).[8]

### ii.  The Declaratory Judgment Act and Subject Matter Jurisdiction Requirement

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction... any court of the United States... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. §2201(a).  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.  *Id.*

Before declaratory relief can be granted, federal subject matter jurisdiction requirements must be satisfied.  *Gov't. Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1222-1223 (9th Cir. 1998) (citing *Skelly Oil Co. v Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).)  The court's jurisdiction in this case is based exclusively on diversity of citizenship.  Original diversity jurisdiction exists when the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).  Where diversity jurisdiction exists, the district court has discretion to hear a declaratory judgment action.  *Avemco Ins. Co. v. Davenport,* 140 F3d 839, 842 n. 1 (9th Cir. 1998).

Royal is a Connecticut corporation with its principal place of business in Charlotte, North Carolina.  Williams Construction,

---

[8] Fed. R. Civ. P. 55(a) states, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

1   Inc. is a California corporation, with its principal place of

2   business in Fresno, California.  Williams is the only defendant

3   named in this action.  The amount in controversy is in excess of

4   $75,000.  This amount is comprised of defense fees and costs

5   already incurred by Royal in the defense of Williams in an

6   underlying state civil action, as well as defense fees and costs

7   and indemnity payments Royal may be required to pay in the

8   future.

9                   **iii. Actual Case or Controversy Requirement**

10          In determining whether declaratory relief can be granted, an

11  inquiry must be made as to whether there is a case of actual

12  controversy between the parties.  *Principal Life Ins. Co. v.*

13  *Robinson,* 394 F.3d 665, 669 (9th Cir. 2005); *American States Ins.*

14  *Co. v. Kearns,* 15 F.3d 142, 144 (9th Cir. 1994).  This

15  requirement is identical to the Article III's constitutional case

16  or controversy requirement.  *Kearns,* 15 F.3d at 144.  In order

17  for a case to be justiciable under Article III of the

18  Constitution, it must be ripe for review.  *Id.*  A controversy in

19  this sense must be definite and concrete, touching the legal

20  relations of the parties having adverse legal interests.  *West v.*

21  *Secretary of the DOT*, 206 F.3d 920, 924 (9th Cir. 2000).  It must

22  be a real and substantial controversy, admitting of a specific

23  relief through a decree of conclusive character, as distinguished

24  from an opinion advising what the law would be upon a

25  hypothetical state of facts.  *Id.*

26          Williams argues that there is no justiciable controversy in

27  this case.  Williams states that the matter is not ripe for

28  review as it involves uncertain or contingent events that are

**22**

pending in state court.  According to Williams, it would be premature for the court to adjudicate the defense fees and costs incurred to date knowing that the underlying action and its ongoing fees and costs have not been fully concluded.  Instead, Williams argues, the court is being asked to rule on abstract or theoretical disagreements between the parties.  In support of its arguments, Williams cites several cases that are factually distinguishable or that contradict its legal position.[9]

The Ninth Circuit has held that an actual case or controversy exists where an insurer seeks a declaration regarding its present duty to defend and indemnify its insured in a pending state court liability suit, even if the underlying action has not yet proceeded to judgment.  *Kearns,* 15 F3d at 144 (making explicit what was impliedly held in *Aetna Casualty & Surety Co. v Merritt*, 974 F.2d 1196 (9th Cir. 1992).)  In *Kearns,* the court resolved the issue of what is required for the justiciable case or controversy requirement of a declaratory judgment action. American States Insurance Company ("American States") appealed the district court judgment dismissing its declaratory relief

---

[9] *Abbot Labs v. Gardner,* 387 U.S. 136, 154 (1967)(an actual controversy exists where there is a "very real dilemma" between the Government and petitioners arising from amendments to a federal regulation.); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 242 (1937)(where parties take adverse positions with respect to their existing obligations under an insurance policy, the dispute is subject to judicial determination as it is definite and concrete, rather than hypothetical.); *Ohio Forestry Ass'n Inc. v. Sierra Club*, 523 U.S. 726, 733-734 (1998)(there was no justiciable controversy where the Sierra Club would have ample opportunity to bring a legal challenge under a federal land and resources management plan, once the threat of harm was more imminent.)

23

action for lack of jurisdiction.  *American States Ins. Co. v. Kearns,* 15 F3d 142, 143 (9th Cir. 1994).  American States provided insurance coverage to defendant Kearns, doing business as Tahoe Boat Company ("Tahoe Boat").  *Id.*  Tahoe Boat was sued in state court under several theories of liability arising out of the sale of a boat.  *Id.*  American States sought to establish that under its insurance policy it had no duty to indemnify or to defend Kearns in the underlying suit.  *Id.*  The district court's jurisdiction was premised on 28 U.S.C. § 2201(a).  *Id.*  American States undertook Tahoe Boat's defense with a full reservation of rights.  *Id.*  American States also brought a diversity suit in federal court for declaratory judgment to establish whether it had a duty to defend or indemnify Tahoe Boat.  *Id.*  The district court concluded that the action was not sufficiently ripe and dismissed it for lack of subject matter jurisdiction.  *Id.*  The Ninth Circuit reversed.

That is the case here.  In this case a real dispute exists between Williams and Royal over Royal's obligations under its insurance contract involving its duties to defend and indemnify Williams in the pending state lawsuit.  This dispute is not hypothetical, but definite and concrete.  Each party is pleading coverage and actively disputes whether Royal must defend and indemnify Williams, now and in the future.  The claims involve the present, specific rights of both parties under the insurance contract.  As in *Kearns,* Royal insured Williams.  Williams has been sued in state court by third parties under several theories of liability.  That suit is being actively litigated.  Royal seeks to now establish that it has no duty to indemnify or to

**24**

defend Kearns in the pending state suit.  Royal has suffered
actual loss by defending Williams under a full reservation of
rights.  This case is ripe for adjudication regardless of whether
the underlying liability action in state court has not yet
proceeded to judgment.  A dispute between an insurer and its
insured over the duties imposed by an insurance contract
satisfies Article III's case and controversy requirement.  *Dizol,*
133 F.3d at 1223 n.2 (citing *Kearns*, 15 F.3d at 144).

### iv.   Abstention Under the Declaratory Judgment Act is Within the Discretion of the Court

If a suit passes constitutional and statutory muster, the
district court must be satisfied that entertaining the action is
appropriate.  *Dizol,* 133 F.3d at 1223.  This determination is
discretionary, for the Declaratory Judgment Act is deliberately
cast in terms of permissive rather than mandatory authority.  *Id.*
However, this discretion is not unfettered.  *Id.*  Prudential
guidance for retention of authority over a declaratory relief
action is provided by *Brillhart v. Excess Insurance Co. of
America,* 316 U.S. 491 (1942).  In deciding whether to abstain in
a federal declaratory relief action, the following factors are
considered:

> 1.   Avoiding needless determination of state
>      law issues
>
> 2.   Discourage litigants from filing
>      declaratory actions as a means of forum
>      shopping
>
> 3.   Avoid duplicative litigation
>
> 4.   Whether there are parallel state
>      proceedings
>
> 5.   Whether the declaratory action will
>      settle all aspects of the controversy

25

6.    Whether the declaratory action will
      serve a useful purpose in clarifying the
      legal action at issue

7.    Whether the declaratory judgment action
      is being sought merely for the purposes
      of procedural fencing or to obtain a
      "res judicata" advantage

8.    Whether the use of a declaratory action
      will result in entanglement between the
      federal and state court systems

9.    The convenience of the parties

10.   The availability and relative
      convenience of other remedies

11.   Whether there are other claims joined
      with an action for declaratory relief
      (i.e. bad faith, breach of contract,
      breach of fiduciary duty, rescission, or
      claims for other monetary relief)

*Dizol,* 133 F.3d at 1225 n.5 (citing *Kearns*, 15 F.3d at 145;

discussing *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495

(1942)); *United Nat'l Ins. Co. v. R&D Latex Corp.,* 242 F.3d 1102,

1112 (9th Cir. 2001).  In exercising jurisdiction, the district

court is required to articulate its rationale justifying its

exercise of jurisdiction.  *R&D Latex Corp.,* 242 F.3d at 1107;

*Dizol,* 133 F.3d at 1223.

### a.    Abstention When There Is A Pending State Court Action

There is no presumption in favor of federal abstention in

declaratory actions generally, nor in insurance coverage cases

specifically.  *Dizol,* 133 F.3d at 1225.  While the Declaratory

Judgment Act grants district courts with discretion to exercise

federal jurisdiction, an obligation to exert jurisdiction arises

when a declaratory judgment action is joined with claims

26

providing an independent basis for federal review.[10]  *Id.* at 1226 n.6.  However, in a case such as this where only a declaratory judgment action is brought, the decision of whether to exercise jurisdiction while an underlying state action is pending requires an inquiry into whether a state court is better suited to resolve the questions in controversy between the parties to the federal suit.  *American Nat'l Fire Ins. v. Hungerford*, 53 F.3d 1012, 1016 (9th Cir. 1995)(*overruled on other grounds by Dizol,* 133 F.3d at 1222-1223.)[11]  This may entail an inquiry into the scope of the pending state court proceeding, the nature of the defenses open there, and whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding.  *Id.*  When an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court, the state court is the more suitable forum.  *Id.* at 1017.[12]

Williams advances several arguments in support of dismissing Royal's declaratory judgment action.  First, there is a parallel proceeding involving the same issues and parties in state court.

[10] Such claims include claims of bad faith, breach of contract, breach of fiduciary duty, and rescission.  *Dizol,* 133 F.3d at 1225.

[11] *Hungerford* was partially overruled by *Dizol's* holding that the Ninth Circuit is not obligated to sua sponte decide whether a district court abused its discretion in exercising discretionary jurisdiction when neither party raised the issue.  *Dizol,* 133 F.3d at 1227.

[12] The holding and rationale in *Hungerford* is adopted entirely from *Allstate Insurance Co. v. Mercier,* 913 F.2d 273 (6th Cir. 1990).

1 Critical facts involving Royal's claims in the declaratory

2 judgment action will be developed in the underlying action and

3 any decision on these claims would be premature.[13]   Second, Royal

4 has an adequate remedy in state court for declaratory relief.

5     The *Hungerford* case applies the *Brillhart* factors.   American

6 National Insurance Company brought a declaratory judgment action

7 against Hungerford seeking a declaration of non coverage for a

8 defense in an underlying state action.   *Hungerford,* 53 F.3d at

9 1014.   Hungerford was the founder of PLM Companies, Inc. which

10 later became Transcisco Industries ("Transcisco") as a result of

11 several business transactions and mergers.   *Id.*   Hungerford

12 served as Chairman of the Board and Chief Executive Officer.   Id.

13 American National provided coverage to Transcisco directors and

14 officers under a liability insurance policy.   *Id.*   Investors for

15 the company brought a claim in state court against Hungerford[14]

16 for breach of fiduciary duty and against the individual

17 defendants for aiding and abetting in those alleged breaches.

18 *Id.*   In addressing American National's claims for declaratory

19 relief, the court reasoned that the interest of comity strongly

20 supported abstaining from exercising jurisdiction in light of the

21

22     [13] For example, Williams argues that any decision as to the
question of reimbursement for defense fees and future indemnity
23  payments cannot be reached since the facts relating to these
issues will be developed in the *Schott* action.   (Doc. 12, Mot. to
24  Dismiss or, in the alternative, Mot. to Stay, Filed April 14,
2006).   This ignores the insurer's right to have coverage
25  determined.

26

27     [14] The business transaction included a transfer of all of
PLMC's stock to other corporate entities.   Investors for the
28  company brought a class action against Transcisco, Hungerford,
and other corporate defendants. *Hungerford,* 53 F.3d at  1014.

1   pending state law action.  *Id.* at 1018-1019.

2       The case of *Allstate Insurance Co. v. Veniegas,* 2 F. Supp.

3   2d 1303 (D. Haw. 1998) is also cited by Williams.  Allstate filed

4   a complaint for declaratory judgment seeking a judicial

5   declaration from the court that it was not obligated to provide

6   coverage benefits or any other coverage, whether for defense or

7   indemnity, to Defendants Clarence Cho and survivors of Veneigas.

8   *Veniegas,* 2 F. Supp. at 1305.  This case arises out of an

9   automobile accident involving a Nissan 300 ZX owned by Cho.  *Id.*

10  at 1304.  Cho's car was driven by Defendant Nakamura who did not

11  have Cho's permission to drive the car.  *Id.*  As a result of an

12  argument between Defendant Nakamura and Veniegas, the car skidded

13  across a roadway, hit a dirt embankment, and overturned causing

14  the death of Veniegas.  *Id.*  Cho was not present at the time the

15  accident occurred.  *Id.*  The Nissan was insured by Allstate for

16  up to $50,000 per person for accidental harm arising out of the

17  operation, maintenance or use of the insured vehicle.  *Id.* at

18  1303-04.

19      Eight months after Allstate filed its federal declaratory

20  judgment action, Defendants filed a state court action against

21  Nakamura.  *Id.* at 1305.  Less than eight days after filing the

22  state court action, Defendants also filed a motion to dismiss

23  Allstate's declaratory relief action.  *Id.*  Contrary to

24  *Hungerford,* the court in *Veniegas* exercised jurisdiction over the

25  federal declaratory judgment action.  *Id.* at 1307.  It reasoned

26  that the state action and the federal action involved two

27  different set of issues.  *Id.* at 1306.  The issues in the

28  underlying state court action solely revolved around an analysis

**29**

1   of Hawaii's negligence law whereas the declaratory relief action
2   required the application and interpretation of, Hawaii's
3   insurance coverage law.  *Id.*  Accordingly, Allstate's declaratory
4   relief action did not involve a needless determination of state
5   law.  *Id.*  The *Veniegas* court further reasoned that if the court
6   were to grant the motion to dismiss, it would in effect be
7   encouraging insureds to file a lawsuit in state court as a means
8   of preempting federal court jurisdiction in insurance coverage
9   cases.  *Id.*  The court concluded that exercising federal
10  jurisdiction in *Veneigas* would not be an abuse of discretion.
11  *Id.* at 1307.  Williams' contentions will likewise foreclose Royal
12  from seeking a federal forum in which jurisdiction exists.

13      Royal makes several arguments in opposition to Williams'
14  motion to dismiss.  First, Royal correctly argues that the
15  underlying action involves liability issues under the
16  construction contract separate and independent from the insurance
17  coverage issues involved in the federal declaratory relief
18  action.  (Doc. 14, Opposition)  Royal points out that it is not
19  and cannot be a party to the underlying state action and that the
20  underlying state action does not seek the court's declaration
21  regarding the interpretation of Royal's policy provisions.  (Id.)
22  Royal argues that it cannot be joined as a party in the
23  underlying action because it would prejudice Williams' case.
24  (Id.)

25      *Hungerford* addressed several *Brillhart* factors.  First,
26  *Hungerford* found that the underlying action sufficiently
27  paralleled the federal declaratory judgment action.  *Hungerford,*
28  53 F.3d at 1017.  While the federal action presented different

**30**

legal issues in its pleadings than those presented in the state action, the ultimate legal determination of both actions depended on the same set of facts. *Id.* That is not true here as interpretation of the policy terms are in no way implicated in the underlying state case.

In *Hungerford*, an alternate state remedy existed by which the legal determinations sought in the federal action could be made by the state court that had access to a better developed factual record and was in a superior position to address the legal issues on which the insurer sought a declaration of right. *Id.* at 1017-18. That is not the case here where insurance law issues and policy interpretations are to be decided and are before the state court.

It is irrelevant here that the underlying case has not been decided. The *Hungerford*, court observed that courts should not be required to decide rights and other legal relations in a vacuum. *Id.* at 1017. There is no risk that the district court's determination of insurance coverage will conflict with a state case's determination of the liability of the parties in the underlying construction dispute, two of whom are the parties to the insurance coverage dispute.

*Hungerford* also noted the importance of discouraging forum shopping, procedural fencing, and the race for "res judicata" in the insurance company's attempt to obtain a federal forum to provide the remedy it seeks. *Id.* at 1018. *Veniegas* suggests that the federal court should determine whether the declaratory judgment action was filed as a "defensive" or "reactive" measure. *Veniegas,* 2 F. Supp. 2d at 1306.

1

### b.   Analysis

2    In this case, Royal only brought a federal declaratory

3  judgment action against its insured, Williams, limited to

4  insurance issues.  Although Royal does not assert a claim that

5  invokes federal question jurisdiction, diversity provides an

6  independent grant of federal jurisdiction.  That Royal brought

7  the declaratory judgment claim while the underlying action was

8  pending in state court is not of consequence because none of the

9  insurance interpretation issues are present in the state case and

10 Royal is entitled to have the insurance coverage dispute

11 resolved.  The underlying state case was filed on January 8,

12 2003.  The parties are silent as to when that case was tendered

13 by Williams to Royal.  Royal issued its reservation of rights

14 letter to Williams on February 25, 2005.  Royal issued its letter

15 "in light of (Santa Rosa's) new allegations."[15]  Royal filed its

16 declaratory judgment complaint on January 16, 2006, over three

17 years after the underlying action.  A mandatory settlement

18 conference in the underlying action took place on June 5, 2006

19 and trial is scheduled for October 2006.

20    In this case, Royal correctly asserts that different legal

21 issues are present in the federal and state actions.  The

22 ultimate facts determined in the state case will have a bearing

23 on but do not determine coverage.

24    Also, Royal should not be forced to seek interpretation of

25

26

27    [15] Royal cites to the allegations in Santa Rosa's cross
   complaint which was filed on November 14, 2005, after the date of
28 the reservation of rights letter.  However, Santa Rosa's initial
   cross complaint was filed on July 21, 2004.

1  its policy in a state court where the pending case does not

2  implicate insurance issues and the claims in the case will have

3  to be initiated from ground zero in the state court.  The

4  underlying action will proceed to trial in October 2006, and any

5  facts that bear on final coverage decisions will then be

6  determined.  As this case progresses, it can be determined if any

7  factual issues remain that must be determined.  Introducing

8  insurance issues in the state case will increasingly confuse and

9  unduly complicate that action so that the state action may

10  undoubtedly require a continuance of the trial or severance.

11      Defendant Williams' MOTION TO DISMISS IS DENIED.

## 5.  **MOTION TO STAY**

13  **A.   Standard**

14      Although a motion to stay is "not within the ambit" of the

15  Federal Rules of Civil Procedure, "federal courts often consider

16  these motions in an effort to maximize the effective utilization

17  of judicial resources and to minimize the possibility of

18  conflicts between different courts."  5A Charles A. Wright &

19  Arthur R. Miller, Federal Practice and Procedure, § 1360, at 438-

20  39 (2d ed. 1990).  A stay is appropriate when a similar action is

21  pending in another court (whether state or federal) or when

22  arbitration may be appropriate.  *Hungerford*, 53 F.3d at 1016 (9th

23  Cir. 1995)(upholding federal abstention where several state court

24  claims were pending); *Privitera v. California Bd. of Med. Quality*

25  *Assurance*, 926 F.2d 890, 895-96 (9th Cir. 1990) (holding that a

26  stay was not appropriate because there was no indication that

27  duplicative state court litigation would be avoided or that an

28  order compelling arbitration would avoid a decision on federal

1  constitutional issues); *See also* Wright & Miller at 439-40.

2  A judge has wide discretion to use the inherent power of the
3  federal court to promote judicial efficiency and prevent
4  prejudice to the parties in granting or denying a motion to stay.
5  *See* Wright & Miller at 441.  In a declaratory judgment action a
6  district court is authorized in the sound exercise of its
7  discretion, to stay or dismiss an action seeking a declaratory
8  judgment before trial or after all arguments have drawn to a
9  close.  *Wilton v. Seven Falls,* 515 U.S. 277, 288 (1995).  In the
10 declaratory judgment context, the normal principle that federal
11 courts should adjudicate claims with their jurisdiction yields to
12 considerations of practicality and wise judicial administration.
13 *Id.*  Where the basis for declining to proceed is the pendency of
14 a state proceeding, a stay will often be the preferable course
15 because it assures that the federal action can proceed without
16 risk of a time bar if the state case, for any reason, fails to
17 resolve the matter in controversy.  *Id.* at n.2.

18  **B.  A Stay is Appropriate When The Declaratory Judgment
19      Question Prejudices the Parties in the Underlying State
        Action**

20  In deciding whether or not to abstain from granting federal
21 declaratory relief a factor to consider is whether the
22 declaratory relief action is sought merely for the purposes of
23 "procedural fencing" or to obtain a "res judicata" advantage in
24 the underlying state action.  *Dizol,* 133 F.3d at 1225 n.5.  When
25 courts talk about prejudice to the insured from concurrent
26 litigation of the declaratory relief and third party actions the
27 focus is on the following:

28  1.   Prejudice resulting from the insurer

**34**

permitted to join forces with the
plaintiffs in the underlying action as a
means to defeat coverage.

2.  Prejudice resulting from when the
insured is compelled to fight a two
front war, doing battle with the
plaintiffs in the third party litigation
while at the same time devoting its
money and human resources to litigating
coverage issued with its carriers.

3.  Prejudice resulting from any adverse
factual findings in the declaratory
relief action that will have a res
judicata effect on the underlying state
action.

*Scottsdale v. MV Transportation,* 36 Cal. 4th 643, 662 (Cal.

2005); *Montrose Chem. Corp v. Superior Court*, 25 Cal. App. 4th

902, 910 (Cal. Ct. App. 1994) (Montrose II).  A stay of a

declaratory relief action to determine coverage is often in order

when the coverage question turns on facts to be litigated in the

underlying third party action to eliminate the risk of

inconsistent factual determinations that could prejudice the

insured.  *Scottsdale,* 36 Cal. 4th at 662*.*

Consideration must also be given to the burden on insurance

carriers that must continue to pay defense costs and fees until

the underlying actions are resolved.  *Montrose II,* 25 Cal. App.

4th at 910.  However it is only where there is no potential

conflict between the trial of the coverage dispute and the

underlying action that an insurer can obtain an early trial date

and resolution of its claim that coverage does not exist.

*Scottsdale,* 36 Cal. 4th at 662;  *Montrose II,* 25 Cal. App. 4th at

910.

Royal asserts the three following causes of action in its

complaint:

**35**

1.   A declaration that Royal has no duty to
     indemnify Williams in the Santa Rosa
     action for non covered causes of action
     or those that fall within the policy
     exclusions; And a declaration that most
     of the "property damage" does not fall
     within the policy's insurance grant
     which applies "only if" "prior to the
     policy period, no insured... knew that
     the property damage had occurred in
     whole or in part.

2.   A declaration that Royal has a right to
     reimbursement of defense fees and costs
     incurred by Royal in the Santa Rosa
     Action in defense of uncovered claims.

3.   A declaration that Royal has a right to
     reimbursement of indemnity payments that
     may be made by Royal in the Santa Rosa
     Action to the extent that it pays
     anything towards settlement or a
     judgment in the Santa Rosa Action other
     than for covered damages to any covered
     causes of action.

Royal lists the following Santa Rosa claims as non covered causes of action[16]:

1.   breach of contract

2.   express and implied contractual
     indemnity

3.   implied equitable indemnity

4.   recovery on performance and payment bond

5.   express and implied breach of warranty

6.   fraud, deceit (intentional
     misrepresentation of fact)

7.   fraud, deceit (concealment of fact)

8.   punitive damages

Royal argues that these alleged causes of action and claims

---

[16] Santa Rosa also brought a negligence claim against Williams in the underlying action.  The parties are silent as to the Santa Rosa negligence claim.

for relief are not covered because they do not qualify as "property damage" caused by an "occurrence" nor do they otherwise qualify for coverage under the policy.  Royal does not specify what claims would fall within the policy's exclusions.  The policy exclusions include:

> 1.    The Expected or Intended Injury Exclusion
>
> 2.    The Business Risk Exclusion
>
> 3.    The Designated Operations Exclusion Residential Work

Williams rejoins that a determination of the declaratory judgment action would prejudice it by requiring that it fight a "two front war."  Proceeding with this declaratory judgment action would prejudice Williams by requiring that it not only litigate against plaintiffs in the underlying action but also devote its money and human resources to litigating coverage issues with Royal.

Further, any determination of whether Royal has a duty to defend and indemnify Williams in the *Santa Rosa* action with respect to non covered causes of action requires an inquiry into what causes of action are covered and not covered under the policy terms and its exclusions.  This question will inevitably turn on facts to be litigated in the underlying complaint.  There is a very real risk of the declaratory judgment action having a res judicata effect in the underlying action and resulting in prejudice to Williams.

Royal's right to seek adjudication of coverage issues by way of a declaratory relief action during the pending state action a balance of the competing interests of the insured and the

1  insurer.  Royal's policy limits and payment of non covered

2  defense fees will soon be implicated in the settlement conference

3  in the state action.  However, Royal has properly reserved its

4  rights as an insurer under a standard Commercial General

5  Liability policy, under which it may be compelled to advance sums

6  to defend its insured against a third party lawsuit.  *Scottsdale*,

7  36 Cal. 4th at 662.  Royal has the right to recoup such costs

8  from Williams if it determined, as a matter of law, that no duty

9  to defend ever arose because the *Santa Rosa* or the *Schott* actions

10 never presented any covered claim.  *Id.*

11      Lastly, Royal argues that if there is a finding that a stay

12 is appropriate, the coverage defenses that Royal is responsible

13 for should be severed from the coverage defenses that are not its

14 responsibilities.  A stay is appropriate to prevent potential

15 prejudice to Williams if facts are decided here that will

16 prejudice it in the state case and will require it to fight a two

17 front war.  If the state case is not tried or resolved in

18 October, Royal may apply for a partial lifting of the stay to

19 address allegedly insured claims for which no coverage can exist

20 as a matter of law.

21      Williams motion to stay Royal's declaratory judgment action

22 is GRANTED.

### 6.   <u>CONCLUSION</u>

25 Defendant's MOTION TO DISMISS is DENIED.

26 Defendant's MOTION TO STAY is GRANTED, subject to the terms of

27 this decision.

28      Defendant should lodge an order consistent with this

**38**

decision within five days following service of this decision by the clerk of court.  All pending hearings are vacated.  The parties will file a joint status report six months from the date of this order.

**SO ORDERED**

Dated: July 24, 2006          /s/ OLIVER W. WANGER


                              **OLIVER W. WANGER**
                        **United States District Judge**